**Michael Anthony GOTTSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 04–95–00869–CR to 04–95–00876–CR and 04–95–00892–CR.**

Court of Appeals of Texas, San Antonio.

Dec. 31, 1996.

Rehearing Overruled Feb. 5, 1997.

---

Brenda Levenstein, Assistant Criminal District Attorney, San Antonio, for appellee.

Before CHAPA, C.J., and STONE and GREEN, JJ.

GREEN, Justice.

Michael Gottson, a.k.a. Tyrone Davis, appeals his conviction on eight charges of aggravated robbery and one charge of possession of a forged check. Trial was before the bench. After pleading guilty pursuant to a plea bargain, the trial court sentenced Gottson to ten years imprisonment on the forgery charge and thirty years on each of the aggravated robbery charges, with the sentences running concurrently. Gottson appeals each case on identical grounds of error. In his first point of error, Gottson contends that he received ineffective assistance of counsel, alleging his trial attorney failed to investigate an insanity defense. In his second point of error, Gottson argues that the trial court erred when it refused to allow Gottson to withdraw his pleas.

## Facts

Gottson pled guilty to possession of a forged check and to eight charges of aggravated robbery pursuant to a plea bargain. After hearing evidence, the trial court accepted Gottson's pleas and found him guilty on February 21, 1995. The court then ordered a pre-sentence investigation. On March 6, 1995, Gottson filed a motion to withdraw his pleas claiming his pleas were involuntary due to duress from the trial judge; the trial court denied this motion. Gottson's trial attorney, Boyd Burkholder, filed a motion for psychiatric evaluation of Gottson after he visited Gottson in jail and found him "depressed and incoherent" apparently due to a failed suicide attempt.

On June 7, 1995, Dr. Raymond Potterf examined Gottson pursuant to a court order directing him to determine Gottson's competency to stand trial. In a six page report, Dr. Potterf concluded that Gottson was not competent to stand trial and noted that Gottson was not sane at the time he committed the crimes.[1] Based on this report, Gottson

Alex J. Scharff, San Antonio, for appellant.

1. The latter conclusion, in addition to being non

responsive to the court order, simply consisted of

filed another motion to withdraw his pleas which the trial court denied. On August 24, 1995, Dr. Cesar Garcia evaluated Gottson pursuant to court order and determined that Gottson was competent to stand trial. The court then conducted a competency hearing before a jury, and the jury found Gottson competent to stand trial.

Subsequently, Gottson's attorney, Burkholder, sought to withdraw as attorney of record. The trial court appointed a new attorney who then filed another motion to withdraw Gottson's guilty pleas based upon Burkholder's failure to pursue an insanity defense. At the hearing on this matter, Gottson's new attorney presented evidence that Burkholder had spoken with Gottson prior to his pleas concerning Gottson's mental illness, and Burkholder decided, after consultation with Gottson, that they would use Gottson's mental condition in mitigation of punishment and not as an insanity defense. Burkholder also testified that he was shocked after he read Dr. Potterf's report that Gottson was insane at the time of the offenses. The trial court ultimately denied the motion and sentenced Gottson to ten years imprisonment for the forged check possession and thirty years on the aggravated robbery charges, with all sentences running concurrently.

After the overruling of Gottson's motion for new trial and supplemental motion for new trial, the trial court permitted Gottson to appeal.

## Discussion

### Ineffective Assistance of Counsel

■ In his first point of error, Gottson contends that he was denied effective assistance of counsel after his trial attorney failed to investigate a possible insanity defense.

■ In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court enunciated a test for determining whether a defendant received ineffective assistance of counsel, which the Texas Court of Criminal Appeals soon adopted. *See Holland v. State*,

761 S.W.2d 307, 314 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989); *Hernandez v. State*, 726 S.W.2d 53, 54–55 (Tex.Crim.App.1986). The *Strickland* test focuses on reasonableness, measuring the assistance received against the prevailing norms of the legal profession. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064–65; *Hernandez*, 726 S.W.2d at 55. Under the *Strickland* two-pronged analysis, a convicted defendant must show that (1) his trial counsel's performance was deficient and (2) the deficiency prejudiced the defense to such an extent that he was deprived of a fair trial. *Holland*, 761 S.W.2d at 314; *see Strickland*, 466 U.S. at 687, 691–92, 104 S.Ct. at 2064, 2066–67.

■ Under the first prong of the test, counsel is presumed to have rendered adequate assistance, and it is incumbent on the defendant to identify those acts or omissions which do not amount to reasonable professional judgment and are outside the "range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that the assistance provided was reasonably professional, and the defendant must overcome the presumption that, under the circumstances, the challenged action might reasonably be considered sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065.

■ The second prong requires the defendant to prove prejudice by focusing on whether the result of the proceeding was fundamentally unfair or unreliable, rather than solely on the outcome determination. *Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993). A defendant cannot be said to have received ineffective assistance of counsel merely because the outcome of his trial would have been different. *Id.* "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372, 113 S.Ct. at 844. Thus, for appellant to

one sentence that "at the time of the alleged offense Mr. Gotson [sic] was not sane." The

report failed to articulate stating a basis for this conclusion for any of the nine different offenses.

succeed, we must find that he was deprived of a substantive or procedural right, which in turn deprived him of a fair trial. Because we find that Burkholder's representation was reasonable, we do not address this second prong of *Strickland.*

Gottson attempts to establish deficiency and prejudice by alleging that his trial counsel failed to investigate and pursue a possible insanity defense prior to Gottson's pleas. To support his argument, Gottson relies on *Ex Parte Duffy,* 607 S.W.2d 507 (Tex.Crim.App. 1980) and claims it is directly on point. We disagree. In *Duffy,* the defendant's retained counsel, Joel Conant, took over the case after two appointed attorneys had already begun some work for the defendant on the matter. *Ex Parte Duffy,* 607 S.W.2d at 510. Prior to Conant's hiring, the defendant's appointed attorneys had already started an investigation into the defendant's insanity, and in fact, had already filed a motion requesting the appointment of a psychiatrist in an attempt to develop an insanity defense. *Id.* at 510, 519. Once Conant replaced the appointed attorneys, however, Conant did nothing to further investigate the possibility of an insanity defense even though Conant knew of the previous attorneys' efforts in developing an insanity defense. *Id.* at 517, 519. Moreover, Conant offered no explanation for this blatant omission on his part, which, among several other incidents of neglect, led the Court of Criminal Appeals to find that Conant rendered ineffective assistance. *Id.* at 525 n. 28.

Unlike attorney Conant in *Duffy,* Burkholder did investigate and research the possibility of an insanity defense despite Gottson's allegation that Burkholder "only cursorily reviewed" the viability of an insanity defense. At the hearing on Gottson's third motion to withdraw his pleas, Burkholder was asked what work he did toward developing an insanity defense, to which he responded:

> I listened to [Gottson]. And he provided me some medical records, subsequent to that.
> I told him, after my reflection on it, and *after the research that I did,* that it was my opinion that, in his best interest, we not proceed on that basis. Rather, that anything along those lines be used to miti-

gate whatever sentence ultimately occurred.

Although the record does not indicate the amount of time Burkholder spent researching and investigating nor the depth of such research or investigation, this Court cannot assume that an attorney made no investigation just because a record is silent as to the depth of the attorney's investigation. *See Hernandez,* 726 S.W.2d at 57. Burkholder admits that he did not seek a medical opinion regarding Gottson's sanity prior to the pleas, but the record does reflect that Burkholder spoke with Gottson, read Gottson's past medical records, and did "research."

Burkholder did not realize that Gottson's competency could be a problem until approximately one month after the pleas were entered. On that day, Burkholder spoke with Gottson, who appeared incoherent and depressed, at jail; Gottson had apparently just attempted suicide using some solvent. It was then that Burkholder realized the necessity of filing a motion for a psychiatric evaluation of Gottson. Burkholder's representation of Gottson, however, is not to be judged by hindsight. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

The record reflects that prior to his pleas, Gottson initially fluctuated on whether or not he wanted to use his mental condition as a defense or a mitigating factor, but eventually he agreed to use it in mitigation of punishment. Burkholder's decision, and Gottson's acquiescence, to not pursue an insanity defense was admittedly a strategical move. In a similar case, the Court of Criminal Appeals addressed an attorney's decision not to use the defendant's mental condition as an insanity defense and held that this decision did not result in ineffective assistance. *Faz v. State,* 510 S.W.2d 922, 926 (Tex.Crim.App.1974). The court stated that it could not second-guess the attorney's strategical move. *Id.*

As in *Faz,* we cannot second-guess Burkholder's decision to use Gottson's mental condition in mitigation of punishment instead of as a defense without the benefit of evidence indicating the extent of Burkholder's research and investigation. *See id.* In light of the record and the presumption that Burkholder's performance was reasonably profes-

sional, we cannot conclude that he provided ineffective assistance of counsel. Gottson's first point of error is overruled.

### Withdrawal of Guilty Pleas

■ In his second point of error, Gottson claims that the trial court erred by refusing to allow him to withdraw his guilty pleas after the judge reviewed Dr. Potterf's evaluation indicating that Gottson was not sane at the time of the crimes.

■ Before judgment has been pronounced or the case has been taken under advisement, a defendant may withdraw his plea of guilty as a matter of right without assigning reason. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex.Crim.App.1979); *Harling v. State*, 899 S.W.2d 9, 11 (Tex.App.— San Antonio 1995, pet ref'd). However, after the case has been taken under advisement or judgment has been pronounced, a motion to withdraw pleas is considered untimely, and the trial court has discretion whether or not to allow the defendant to withdraw his pleas. *DeVary v. State*, 615 S.W.2d 739, 740 (Tex. Crim.App.1981); *Jackson*, 590 S.W.2d at 515; *see Milligan v. State*, 168 Tex.Crim. 202, 324 S.W.2d 864, 865 (App.1959).

■ If the defendant does not seek to withdraw his plea and evidence of his innocence is raised after an adjudication of guilt, a judge in a bench trial is not required to *sua sponte* withdraw the defendant's plea. *See Sommer v. State*, 574 S.W.2d 548, 549 (Tex. Crim.App.1978) (op. on reh'g) (citing *Moon v. State*, 572 S.W.2d 681 (Tex.Crim.App.1978)); *Sullivan v. State*, 573 S.W.2d 1, 4 (Tex.Crim. App.1978) (op. on reh'g). When the plea is before the court, the trial judge acts as the trier of facts and ultimately weighs the evidence submitted. *Moon v. State*, 572 S.W.2d 681, 682 (Tex.Crim.App.1978) (op. on reh'g); *see Sommer*, 574 S.W.2d at 549; *Sullivan*, 573 S.W.2d at 4. "The trial judge as the trier of the facts may without withdrawing the plea decide the issue either finding the defendant not guilty or guilty as he believes the facts require." *Sommer*, 574 S.W.2d at 549; *Sullivan*, 573 S.W.2d at 4.

The *Sullivan* and *Sommer* decisions both involved the question of whether a trial court had the duty to *sua sponte* withdraw the defendant's guilty plea after the judge had already adjudicated guilt. *See Sommer*, 574 S.W.2d at 548; *Sullivan*, 573 S.W.2d at 1. In both cases, evidence of the defendant's innocence surfaced during the punishment phase of the trial. *See Sommer*, 574 S.W.2d at 549 (Roberts, J., concurring in part and dissenting in part) (evidence raised issue as to whether defendant had knowledge of his entering building in burglary case); *Sullivan*, 573 S.W.2d at 1 (testimony fairly and reasonably raised issue as to whether sexual intercourse was consensual). Nevertheless, the Court of Criminal Appeals held that the trial judge did not have a duty to withdraw the guilty plea, reasoning that the trial court remained the ultimate trier of facts in a bench trial and was able to decide the defendant's guilt or innocence without withdrawing the plea. *Sommer*, 574 S.W.2d at 549; *Sullivan*, 573 S.W.2d at 4.

Gottson, on the other hand, argues that the present situation is controlled by *Payne v. State*, 790 S.W.2d 649 (Tex.Crim.App.1990), a case in which the Court of Criminal Appeals found reversible error in the trial court's refusal to permit the defendant to withdraw his guilty pleas. In *Payne*, the defendant pled guilty to aggravated robbery charges and then "surprised his attorney, the State, and the judge" when he testified that he used a toy gun rather than a real gun in the robberies, raising an issue as to his innocence of the aggravated robbery charges. *Payne*, 790 S.W.2d at 650–51. The court did not indicate exactly when this testimony occurred, whether it was subsequent or prior to the judge's taking the case under advisement or the judge's adjudicating guilt.

Gottson asserts, without specifying the basis for such contention, that the *Payne* defendant's testimony occurred during the punishment phase of the trial. Gottson possibly infers this from the court's initial summary of the facts:

> Appellant pleaded guilty, but refused a plea bargain offer of thirty years. Instead, appellant elected to have the trial judge sentence him without accepting a recommendation from the State. Appellant confessed to the offenses in open

court, but he apparently surprised his attorney, the State, and the judge with the following testimony. . . .

*Id.* at 650. The court, however, later (1) referred to the defendant's request to withdraw his pleas as "timely" and (2) noted that the case was procedurally identical to the facts in *Wilson v. State*, 515 S.W.2d 274 (Tex.Crim.App.1974). *See id.* at 651–52. Both of these statements in the court's opinion are significant.

■ The court's calling the defendant's request "timely" suggests that the request occurred prior to an adjudication of guilt. Requests to withdraw pleas are generally characterized as late or untimely when the requests are made after the case has been taken under advisement or guilt has been adjudicated. *See, e.g., DeVary,* 615 S.W.2d at 740; *Jackson,* 590 S.W.2d at 515; *Milligan,* 324 S.W.2d at 865; *Scott v. State,* 860 S.W.2d 645, 647 (Tex.App.—Dallas 1993, no pet.); *cf. McWherter v. State,* 571 S.W.2d 312, 314 (Tex.Crim.App.1978) (labelling defendant's request as timely when it was filed prior to jury's retirement). If Payne's request to withdraw his plea occurred in the punishment phase of the trial, the court would not have referred to the request as timely.

Also important is the *Payne* Court's considering *Wilson* procedurally identical to the facts before the court. In *Wilson,* the defendant requested to withdraw his plea prior to the close of evidence and thus during the guilt/innocence phase of the trial. *See Wilson,* 515 S.W.2d at 275. This tends to indicate that the surprising testimony arose before an adjudication of guilt.

■ Based on the *Payne* Court's reference to Payne's request as timely and the court's notation of the procedural similarities to *Wilson,* we believe that *Payne* is distinguishable from the present case since the *Payne* defendant apparently sought to withdraw his pleas prior to an adjudication of guilt. This distinction is important since a trial court's ruling on a defendant's request to timely withdraw his plea is subject to a harmless error standard of review while a trial court's ruling on a request made after an adjudication of guilt is subject to an abuse

of discretion review. *Compare Payne,* 790 S.W.2d at 652 *and Wilson,* 515 S.W.2d at 275 *with DeVary,* 615 S.W.2d at 740 *and Jackson,* 590 S.W.2d at 515.

In the case at bar, Gottson sought to withdraw his pleas of guilty after the court had adjudicated him guilty. Thus, the appropriate standard of review is abuse of discretion. To establish an abuse of discretion, the appealing party must show that the trial court's ruling lies outside the "zone of reasonable disagreement." *DuBose v. State,* 915 S.W.2d 493, 496–97 (Tex.Crim.App.1996); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim. App.1990) (op. on reh'g). Here, we cannot say that the judge's denial of Gottson's motion to withdraw his pleas was outside the zone of reasonable disagreement. The judge may have refused Gottson's request to withdraw the pleas because the judge, as the trier of facts, felt he could determine Gottson's guilt or innocence without having the pleas withdrawn, as in *Sullivan* and *Sommer.* Additionally, the judge may have decided not to rely upon Dr. Potterf's conclusion of insanity since the doctor's six page report only contained one sentence regarding Gottson's sanity at the time of the offenses and since Dr. Potterf did not discuss any of the nine offenses. We overrule Gottson's second point of error.

Accordingly, we affirm the judgment of the trial court.

CHAPA, C.J., dissents.

CHAPA, Chief Justice, dissenting.

Because, at the time appellant entered his pleas, his trial counsel did not possess substantial evidence that appellant was insane when he committed the charged offenses, I agree with the majority that trial counsel was not ineffective for choosing to use appellant's mental condition as mitigating evidence during punishment instead of as a defense. However, because I believe the trial court abused its discretion in denying appellant's motion to withdraw his guilty pleas once it was presented with evidence of a complete defense, I respectfully dissent.

I recognize that the standard of review to be applied when a defendant moves to withdraw a guilty plea depends on when the motion is made. When a motion to withdraw a guilty plea is made after the case has been taken under advisement, as in the present case, the trial court's ruling is reviewed under an abuse of discretion standard. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex.Crim. App.1979). On the other hand, where a similar motion is made prior to the court accepting the defendant's plea, the trial court's actions are reviewed for harmful error. *Id.*

As such, I also recognize that *Payne v. State*, 790 S.W.2d 649 (Tex.Crim.App.1990), is distinguishable from the present case in that it appears that the motion to withdraw the guilty plea in *Payne* was made prior to the adjudication of guilt. *Payne* was, therefore, decided under a harmless error standard of review. We are bound here by an abuse of discretion standard. In any event, the facts in *Payne* are instructive. After pleading guilty to aggravated robbery, Payne testified that he used a toy gun rather than a real gun in the robbery. *Id.* at 651. The State cross-examined Payne, attempting to discredit his testimony with allegations of fabrication. *Id.*

The court of criminal appeals held that Payne's motion to withdraw his guilty plea should have been granted as his testimony clearly raised a factual issue as to whether he could be guilty of aggravated robbery. *Id.* at 652. The court reasoned that under such circumstances, it could not find that harm had not occurred. *Id.* In *Payne*, the new defensive evidence could have exonerated Payne from the charge of aggravated robbery. However, there is nothing to indicate that Payne could not have been found guilty of a lesser included offense in spite of the new evidence he offered. Yet, the court still found harm. In the present case, by establishing that he was insane when he committed the offense, appellant would have been exonerated from any charge the State could have brought against him under these facts. Therefore the facts in the present case, when compared to those in *Payne*, indicate an even greater likelihood of harm resulting from the denial of appellant's motion to withdraw.

At the hearing on his motion to withdraw, appellant presented independent evidence that he was not sane at the time he committed the charged offenses. This evidence came from a court appointed expert, and therefore, unlike the evidence offered in *Payne*, it was objective and not prone to fabrication. Further, the evidence went uncontradicted and unchallenged by the State. Certainly, uncontroverted evidence of insanity raises a factual issue as to whether appellant could be guilty of the charged offense, or, for that matter, of any offense. *See* TEX. PENAL CODE ANN. § 8.01 (Vernon 1994) (establishing insanity as an affirmative defense to prosecution).

The majority focuses on the fact that Dr. Potterf's opinion regarding appellant's sanity at the time of the offenses was non-responsive to the trial court's order to determine competence to stand trial. The majority also finds important the fact that Dr. Potterf's conclusion was made in "a one sentence statement." I do not see the relevance of these distinctions. Regardless of whether Dr. Potterf's conclusion regarding sanity was presented independently or upon request, in an entire report or in one sentence, it constituted impartial and uncontroverted evidence that appellant was not sane when he committed the charged offenses.

The trial court's implied finding that appellant was not insane when he committed the crimes with which he was charged is contrary to the only evidence on this issue presented at the hearing. As such, the trial court abused its discretion in denying appellant's motion to withdraw his guilty pleas in the face of clear evidence indicating a complete defense to any offense arising from the facts of this case. The evidence clearly warranted further development of the issue of appellant's sanity at the time of the offense. Appellant was unquestionably harmed by the denial of an opportunity to completely establish a newly discovered defense that could have completely exonerated him of the charges he faced.

I would reverse the judgment and remand this case to the trial court for further proceedings.